# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## JULY TERM, 1872.

[No. 2,697.]

## J. MORA MOSS, HORACE W. CARPENTIER, EDWARD F. BEALE, HERMAN WOHLER, JOHN B. FELTON, JOHN NIGHTINGALE, AND BENJAMIN BELLOC v. W. W. ATKINSON, J. W. PERKEY, EDWARD MASTERSON, AND SOME FIFTY OTHERS.

FINDINGS OF FACTS.—When findings are wholly unsupported by the evidence, it is the duty of the Court to set them aside and grant a new trial.

MEMORANDUM OF CONTRACT FOR SALE OF LAND.—A letter signed by the owner of land and addressed to A., stating that he has agreed with B. to sell B. the land, and giving the general terms of the agreement, with a general description of the land and its price, is a sufficient memorandum of a contract for the sale of the land within the Statute of Frauds, and may be enforced by B. in equity.

POSSESSION OF LAND NOTICE OF EQUITABLE RIGHT.—Possession of land under an unrecorded agreement with the owner to purchase the same, is notice sufficient to put others on inquiry, and if they buy of the owner, the contract of purchase may be enforced, as against them, in equity.

CERTIFIED COPY OF RECORDED CONTRACT AS EVIDENCE.—If, at the time of the sale of land, the grantor executes to the grantee, and acknowl-

edges so as to entitle it to record, an instrument assigning to the grantee all moneys due or to grow due on account of sales or contracts of sales made by the grantor of portions of the land, and the instrument is recorded, a certified copy of it is admissible in evidence in an action in relation to an enforcement of the contract between the grantee and one who had made a contract of sale with the grantor.

APPEAL from the District Court of the Eleventh Judicial District, Amador County.

The defendant Perkey alone answered. The Court below granted the injunction, and he appealed.

The other facts are stated in the opinion.

*George Cadwalader,* for Appellant.

It is not necessary that "so called mutuality" should exist in the memorandum of agreement between Perkey and Pico. Willard's Equity Jurisprudence, p. 267, says:

"The only exception to the rule with respect to mutuality is when an agreement under the Statute of Frauds has been executed by the party sought to be charged. In this class of cases, although the plaintiff has not signed the agreement, and it cannot be enforced against him, yet he can enforce it against the other party, by whom it has been executed. This seems to be well settled by the English and American cases.

"The contract in these cases is morally binding on both sides, and the promises to buy and sell are mutual considerations for each other. The statute then requires written evidence of the bargain. One party gives this, and it is his own neglect that alone prevents him from obtaining the same evidence from the other. But he ought not to take advantage of his own negligence, nor should that free him from the legal effect of his own promise, duly evidenced in writing, according to law."

Exactly in point is *DeRutte* v. *Muldrow,* 16 Cal. 505, and

49 Penn. 88. In *Hall* v. *Center*, 40 Cal. 63, the precise question was again determined. The verbal agreement was fully proved; and the testimony shows it would be a fraud of the highest magnitude to refuse its performance. Agreements sanctified by such circumstances are invariably enforced. (*Arguello* v. *Edinger*, 10 Cal. 159.)

The land is described with reasonable certainty, and no person could be mistaken as to its identity. This is more than the law requires. (Hilliard on Vendors, 116.)

The letters of Hancock and Brodie were sufficient memorandums under the Statute of Frauds. Browne, Statute of Frauds, p. 369, says:

"It has been decided that letters addressed to a third party—for instance, stating and affirming the contract—may be used against the writer as a memorandum of it."

Hilliard on Vendors, p. 17, observes: "That the letters may be written by agent." The requirements of the Statute of Frauds is simply for a "memorandum," not a formal contract; and where the former appears, no questions of part performance of what constitutes it can arise. Where there is no memorandum, but a simple "verbal agreement," fairly proved, then other considerations arise, chief among which is the one—Would it not be a fraud to refuse to execute this contract? (*Lowry* v. *Few*, 3 Barbour Ch. 413.)

It is true that the respondents had no "express or actual notice" of the contract between Perkey and Pico, but they did have constructive notice arising from Perkey's possession of the land. The appended definition of "notice" is that in the New York Code, p. 643, Secs. 2008–10:

"Sec. 2008. Notice is either actual or constructive.

"Sec. 2009. Actual notice consists in express information of a fact.

"Sec. 2010. Constructive notice is notice imputed by law to a person not having actual notice."

In *Sampson* v. *Ohleyer*, 22 Cal. 211, the same distinction was observed.

The notice from the possession of Perkey was not restricted. (*Hunter* v. *Watson*, 12 Cal. 363; *Woodson* v. *McCune*, 17 Cal. 314; *Haws* v. *Doll*, 18 Cal. 314; *Landers* v. *Bolton*, 26 Cal. 419; *Fair* v. *Stevenot*, 29 Cal. 490; *Lestrade* v. *Barth*, 19 Cal. 676; *Daubenspeck* v. *Platt*, 22 Cal. 335.)

*H. K. W. Clarke*, for Respondents.

The agreement lacks the essential element of mutuality. It was not in part performed by delivering possession to Perkey, for he was already in possession. The proposition was not accepted or agreed to by Perkey, nor was the writing delivered to Perkey. The offer of a bargain imposes no obligation till accepted, and the acceptance must be as broad and as capable of enforcement as the offer. Without this, there is no mutuality—no consideration. This rule is elementary, and cannot require the support of adjudications. The agreement was void under the Statute of Frauds, except so far as it was in writing, as required by that statute. And there is nothing in the Hancock or the Brodie letters amounting to a valid contract of sale on the one hand, and of purchase on the other. There is no description of the land. A deed employing the same words would be void for uncertainty of description; and a contract of purchase and sale, if properly executed by both parties, would be equally void for uncertainty.

Perkey was holding first notoriously as a squatter, and afterwards as the claimant of adverse titles from Government, and his possession was not changed in form after his alleged agreement with Pico. The notice from possession was therefore restricted to the particular claim under which Perkey entered and occupied. (*Cook* v. *Travis*, 22 Barb. 359; *McMeehan* v. *Griffing*, 3 Pick. 156.)

By the Court, WALLACE, C. J.:

The plaintiffs allege that they are tenants in common and owners in fee of the Rancho Arroyo Seco. The defendant Perkey is in possession of a tract of upwards of nine hundred acres of land within the rancho, whereon he has resided ever since the year 1852.

An action had been brought in the Circuit Court of the United States by one of the plaintiffs for the benefit of all against a number of persons, among whom was the defendant Perkey, to recover the possession of the premises; and that action pending, the present action was brought in the Court below to obtain an injunction to restrain waste and injury by the defendant in possession.

The trial was had before the Court without a jury, written findings were filed and judgment in favor of the plaintiffs having been rendered, and a motion by defendant Perkey for a new trial denied, he brings this appeal from the judgment and from the order denying the motion.

The answer of the defendant, so far as it bears upon the points to be considered, is as follows:

"First—He says that since the month of July, 1852, he has been in the actual and quiet possession of the following tracts of land, to wit:

"1. Lots 2 and 3 in the southwest quarter of Section 7, and the north half of lots 2 and 3 in the northwest quarter of Section 18, in Township No. 5 north, Range 9 east, Mount Diablo base and meridian, and which contain two hundred and ninety-one and seventy-seven one hundredths acres, and are situate in the County of San Joaquin, which said lands were selected by the State of California and located in the United States Land Office for the Stockton Land District with the consent of the Register thereof, on the 25th day of August, 1858, as part of various grants of land made by the

General Government to the State of California, which said selection and location was sold by the State of California to this defendant, and its certificate of purchase issued to him therefor on the 28th day of October, 1858.

"2. The northwest quarter of the southeast quarter of Section No. 18, in the same township, containing forty acres of land, which this defendant purchased from the United States, and on the 14th day of March, 1859, received its certificate of purchase therefor.

"3. The south half of lot No. 2, and the south half of lot No. 3, in the northwest quarter, and the north half of lot No. 2, in the southwest quarter of Section 18, in same township, containing one hundred and thirty-five and fifty-seven one hundredths acres, which this defendant purchased from the United States, and on the 14th day of March, 1859, received its certificate of purchase therefor.

"4. The west half of the southeast quarter and lot No. 1 of the southwest quarter of Section 7, in same township, containing one hundred and sixty acres of land, which this defendant purchased from the United States, and on the 23d of August, 1858, received its certificate of purchase therefor.

"5. Lot No. 1 of northwest quarter and lot No. 1 of southwest quarter of Section 18, in Township No. 5 north, of Range No. 9 east, containing one hundred and sixty acres, which this defendant purchased from the United States, and on the 17th day of February, 1859, received its certificate of purchase therefor.

"And that defendant by force of the facts hereinafter recited is entitled to remain in the possession of all of said parcels of land.

"Second—That these lands as well as the remainder of this township were surveyed by the Government of the United States in the year 1855, and by the proclamation of the President of the United States, dated —— 1858, were ordered sold

in February, 1859, at the Stockton Land Office, and entries thereof were authorized in the usual way.

"Third—That the Mexican grant designated in the complaint by the name of "Rancho Arroyo Seco" was a floating concession of eleven square leagues of land within exterior boundaries containing more than forty square leagues, which said grant in the year 1856 was confirmed by the authorities of the United States to one Andreas Pico. That the first survey and location of said grant did not embrace or include any part of the premises of this defendant. That up to and at the time of the Government land sales, the said Andreas Pico disclaimed the possibility of his said grant covering any part of the land of this defendant. That after the Government land sales and the purchases of this defendant as aforesaid, the original location of said grant was abandoned, and a new one made of such a character as to embrace and take in all the land of this defendant described as aforesaid. That after said last survey, and before the said Andreas Pico had made the sale and conveyance of his right, title, and interest in the said Mexican grant called "Rancho Arroyo Seco," hereinafter stated, the said Andreas Pico bargained and agreed with this defendant that upon the Government of the United States issuing its patent for the said "Rancho Arroyo Seco," so as to include the premises of this defendant, that thereupon in consideration of defendant paying to him the sum of one thousand dollars, and assigning to him the "floats" or evidences of title described as aforesaid, he, the said Andreas Pico, would convey to this defendant the said lands described as aforesaid, and of which this defendant had for so long a time been in quiet possession.

"Fourth—That this defendant, relying upon the agreement of the said Andreas Pico, made no opposition to the said survey nor to the location and patenting of said grant

so as to embrace his premises, but went on and made lasting and valuable improvements thereon of great value, and now on said premises has improvements of the value of five thousand dollars, consisting of one thousand one hundred rods of board fence, a granary, dwelling house, sheds, milk and smoke house, a well and an orchard, which are fully equal to the value of the land itself.

"Fifth—That on the —— day of November, 1862, the said Andreas Pico conveyed to the plaintiffs Carpentier, Beale, Wohler, and J. Mora Moss, in this suit, all his right, title, and interest in and to the said confirmed grant of 'Rancho Arroyo Seco,' and upon the motion of the plaintiffs and a suggestion to the effect that the said Andreas Pico had parted with his right, title, and interest in said grant to plaintiffs in this case, the District Court of the United States for the northern district of California, in which the said land claim proceedings were had and the survey thereof was pending, by its order substituted the said plaintiffs, Carpentier, Wohler, Beale, and J. Mora Moss as claimants and confirmees, in place of the said Andreas Pico, and based upon such substitution, the patent which otherwise would have issued to Andreas Pico issued to the plaintiffs in this case as his grantees, on the 29th day of August, 1863. That in said order of substitution, as well as in the patent issued thereon, the rights of all prior grantees were reserved, and the stipulation therein made saved all rights of the said prior grantees of Andreas Pico to the same extent that they would have been saved and reserved if the patent had issued to said Pico and the order of substitution not have been made. That at the time the plaintiffs made their said purchase from the said Andreas Pico, they had notice of the claim and rights of this defendant, and of the agreement between him and the said Pico, and bought subject thereto; and that it would be a fraud of the highest magnitude to permit plaintiffs to ignore and destroy the manifest right of this defend-

ant to have completed between him and the said Andreas Pico the agreement described as aforesaid for the sale of the aforesaid premises to this defendant.

"Seventh—That after the issuance of said patent—to wit, in the latter part of the year 1863—this defendant tendered to plaintiffs the sum of one thousand dollars and the 'floats' or 'evidences of title' aforesaid, in fulfillment of his part of the agreement with the said Andreas Pico, and demanded from them a conveyance of the premises hereinbefore described, which the said plaintiffs expressly refused to do, on the ground that they were not bound in law to recognize any of the contracts of their said grantor, Andreas Pico.

"Eighth—That the plaintiffs, Felton, Belloc, and Nightingale, are grantees of the said patentees of small undivided interests in said tract of land, and, like their grantors, had notice at the time of their purchase, of the said agreement between this defendant and the said Andreas Pico.

"Ninth—That defendant is now ready and willing to comply with his part of said contract for the purchase of said parcels of land, and for that purpose brings into Court and deposits with the Clerk thereof the sum of one thousand dollars, and is likewise ready and willing, under the direction of this Court, to assign to plaintiffs the floats aforesaid."

The Court found that the grant of the Rancho Arroyo Seco was made to Yorba by the Mexican Government, and was a concession of eleven leagues, to be located within larger exterior boundaries; that Yorba, in 1852, conveyed it to Pico, who obtained a confirmation in 1856, before the United States Board of Land Commissioners, and subsequently in the United States District Court; that afterwards a survey of the land confirmed was made, which did not embrace any part of the land occupied by the defendant Perkey ; that this survey was not approved, but was set aside in April, 1860, and in November, 1862, a new survey

made in the meantime, and embracing the Perkey tract, was approved. It was further found by the Court, that in November, 1862, Pico, the confirmee, conveyed all his interest in the grant to the plaintiffs, J. Mora Moss, Horace W. Carpentier, and others, who thereupon obtained from the District Court of the United States—before which Court the proceedings upon the survey and grant were still pending—an order, substituting them as confirmees instead of their grantor, Pico, " saving, however, to all prior grantees of said Andreas Pico, if any such there should be, their rights under said patent unimpaired, and to the same effect and extent as if said patent had been issued to the said confirmee, Andreas Pico," etc.

The patent subsequently issued to the plaintiffs as substituted confirmees contained the same reservation in favor of prior grantees of Pico, as had been set forth in the order of substitution.

It also appears from the findings that Perkey has been in possession of the premises he claims ever since 1852, and that in November, 1863, he received a patent from the United States for a portion of the land so in his possession, and in controversy in this suit, which he had located under a military bounty land warrant. The findings are to the further effect that from September, 1859, to August, 1861, one Hancock "was the especial agent of Andreas Pico, then owner of said Rancho Arroyo Seco, for making sales of lands, subject to the approval of Pico or of John F. Brodie, his general agent, who alone had authority to conclude sales and execute deeds." That, in October, 1858, Perkey had received from the State of California a certificate of purchase of a portion of the premises in his possession; and between August, 1858, and March, 1859, had also received from the United States Land Office certificates of purchase of various other portions of the general tract in his possession, described in the certificates by sections, townships,

range, etc.   It is also found that "in August, 1859, Hancock, on behalf of Andreas Pico, made a verbal proposition to Perkey that if the final survey of the Arroyo Seco grant, to be thereafter made, should embrace the possessions of Perkey, described as aforesaid, that Perkey was to have a conveyance of said land upon his paying one thousand dollars, after the issuance of the United States patent, and upon assigning the certificates of purchase aforesaid, which the parties called 'floats,' which said proposition was reported to Brodie, the general agent of Pico," etc.   In September, 1859, one Masterson, who seems to have been settled within the limits of the Arroyo Seco grant, and was desirous of making terms with its owners similar to those offered to Perkey, received from Hancock a paper in the following words:

"The proposition to Mr. Perkey was that if in case we shall fail to obtain a confirmation of Pico's first selection, and he thereby be included within the limits of the lands patented, we would take for his nine hundred or more acres ($1,000) one thousand dollars, together with his right to float; so that his loss by sharing the misfortune of the change of location with us shall not, in any event, exceed that sum.   And all who are similarly situated with Mr. Perkey may rely on being able to settle on as favorable terms—that is, in proportion to the number of acres owned in each respective case.

"HANCOCK.

"Sacramento City, September 15th, 1859."

And Hancock having informed Brodie of the substance of the paper delivered to Masterson, Brodie, thereupon, wrote to Masterson, as follows:

"San Francisco, May 12th, 1860.

"Mr. Edward Masterson, Dry Creek—Sir: Mr. Henry Hancock having entered into an agreement with Mr. Per-

key, to the effect that should the land now claimed by him on Dry Creek be included in the final survey of the Arroyo Seco grant, on the part of himself and me, owners of said grant, he would take for said Perkey's land (some two hundred acres bottom land, and seven hundred acres upland) the sum of one thousand dollars, together with his right to float. And said Hancock having also stipulated to settle with other claimants and settlers on Dry Creek, who may be so included in said final survey, I hereby ratify said agreement made by Hancock, and extend it to you for the land occupied or claimed by you on Dry Creek; that is to say, I bind myself to convey to you your land on as favorable terms, and in proportion to the number of acres, as those offered to Mr. Perkey, it being understood that the fulfillment of the contract on your part is to take place immediately on the issuance of the Government patent for the grant aforesaid. I am, respectfully,

"ANDREAS PICO.

"By John P. Brodie."

The Court also found, as a fact, that Perkey made no opposition to the second survey by which his premises were included; and that before the commencement of this suit, and within a few weeks after the issuance of the Arroyo Seco patent to the plaintiffs, he tendered them the one thousand dollars, and offered to assign them the "float," so called, but the plaintiffs refused to receive the money or to accept the proffered assignment. It is also found, that Perkey has continued in the possession of the premises; and since the proposition made to him "has, in good faith, and in expectation that said proposition would be fulfilled, expended the sum of two thousand dollars in making permanent and valuable improvements upon said premises; and the value of said premises is about four thousand dollars, etc."

The Court also found, "that it was not proven that the said Perkey ever gave notice of the acceptance of the said proposition (*i. e.*, the proposition of Hancock made to Perkey), or of his intention to be bound by the conditions thereof; said Perkey on his part never agreed to said proposition, or gave notice of his acceptance thereof."

The first ground specified in the statement upon motion for new trial is, that the finding to the effect that there was no contract between Pico and Perkey for the purchase of the land in controversy, but only an unaccepted proposition from Pico to Perkey to sell it to the latter, is not supported by the evidence. It is to be observed that the plaintiffs at the trial offered no evidence whatever which bore upon that question. The defendant Perkey, testifying upon his own behalf, stated as follows: "In August, 1859, I made this bargain with Hancock as the agent of Andreas Pico; I was not to oppose the survey of the Mexican grant, which then embraced my premises; and if the survey was confirmed, and embraced my land, and a patent issued for the land, that the land was to be conveyed to me by Pico on the issuance of the patent, for one thousand dollars and these floats. The floats were the United States Government and State certificates of purchase, before spoken of. I agreed to this, and he agreed that I should have the land."

This statement of the terms of the contract, it will be seen, is substantially the same contained in the memorandum of Hancock of the date of September 15th, 1859, given by him to Masterson, as the terms of the proposition to Perkey. Hancock's deposition was also read at the trial, and he states that he did agree to sell to Perkey upon the terms recited in his memorandum of that date; and that the reason that he made the agreement was that he might thereby obviate the objection the land officers might otherwise make to changing the location of the Arroyo Seco survey, so as to cover the lands already entered by Perkey; and

that he reported to Brodie the bargain he had made with Perkey, and that Brodie approved it; and he adds, that had Pico remained owner of the premises Perkey would have obtained the land in accordance with the terms of the memorandum of September 15th, 1859.

John P. Brodie, who, as we have seen, had been the general agent of Pico, also testified in the case. He stated that Hancock "reported to me the contract of sale that he had made in behalf of Pico with Mr. Perkey, the defendant in this case. I approved it."

First—"The well settled practice of this Court is not to disturb the findings when the evidence is conflicting; but when wholly unsupported by any evidence, it is our duty to set them aside." (*Smith* v. *Athearn*, 34 Cal. 510.) The contract between Pico and the defendant Perkey, was clearly established by the proofs, and the motion for a new trial upon that ground should have been granted.

Second—The written memorandum of the contract made by Hancock and sent to Masterson was sufficient as against Pico, within the Statute of Frauds. It stated the terms of the contract and set forth the consideration upon which it was made. It described the subject of the contract, viz: "The land now claimed by him (Perkey) on Dry Creek— some two hundred acres of bottom land and seven hundred acres upland," and it was subscribed by Pico, the party by whom the sale was to be made, by his agent, Brodie.

"The meaning of the statute," said Lord Hardwicke, "is to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other, and therefore   *   * where an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted upon" (*Welford* v. *Beazley*, 1 Atk. 503); and it is immaterial that the written memorandum of the contract and the considera-

tion is to be found only in a letter addressed to a third person by the party to be charged.

Third—Nor can the plaintiffs be heard to claim that they are not bound by the contract between Pico and the defendant Perkey. The case shows that Perkey was in possession of the premises under his contract with Pico at the time the plaintiffs purchased of the latter. This possession of Perkey, though not amounting *per se* to actual notice of the agreement, was nevertheless sufficient to put them upon inquiry as to the character of his claim. (*Kelley* v. *Wilson*, 33 Cal. 693.) And in this connection it may be added that there was error in excluding the certified copy of the instrument by which Pico had assigned to the plaintiffs all moneys due or to grow due on account of sales or contracts of sales made by Pico of portions of the Rancho Arroyo Seco. It was acknowledged in the form required to admit it to record as an instrument affecting the title to real property, and had been recorded, and it was upon its face expressly declared by the parties to it to be "part of the same transaction as the purchase and sale of said rancho from the said Pico and Pico to the said Moss and others, of even date herewith."

Judgment reversed and cause remanded for a new trial.

Mr. Justice CROCKETT did not express an opinion.