[Civ. No. 13218. Second Dist., Div. Two. Feb. 25, 1942.]

WALLACE TAYLOR et al., Respondents, v. A. J. ODELL,
Appellant.

Louis N. Whealton for Appellant.

Joseph A. Ball for Respondents.

MOORE, P. J.—This action arose out of an agreement by defendant to assign to plaintiffs a royalty in an oil well for a consideration which was rendered. Defendant appeals.

On July 30, 1933, defendant procured a lease from one Seeger upon a small lot in the Huntington Beach oil field. He assigned the lease to the Two-and-One Oil Company, reserving unto himself the 20 per cent interest in the net production. In August, 1933, Two-and-One commenced drilling and on the 4th of November placed its well on production. Adjacent to and east of the Seeger lease lies the Colter lease at first acquired by defendant on the 10th day of April, 1933. Twenty-two days later defendant assigned the Colter lease to the Odell Petroleum Corporation and in the following July it was assigned to the American Petroleum Company, which "was owned by plaintiff Wallace Taylor and one F. E. Fairfield" and was managed by Taylor.

Prior to the 4th day of November, 1933, defendant agreed with Wallace Taylor and his corporation as follows: That the American Petroleum Company and Wallace Taylor will allow the Two-and-One Oil Company to use a portion of the

surface of the Colter property for the purpose of erecting thereon a pipe rack and slush pit to be jointly used in drilling the Two-and-One well and the well on the Colter lease until such time as the Two-and-One well shall be drilled to completion. As a consideration for the use of such premises, Odell agreed to convey to plaintiffs one-half of one per cent of the net sales of petroleum products from the Two-and-One well and to cause such revenues to be paid to plaintiffs.

After the Two-and-One well had been placed on production, plaintiffs consented that Two-and-One might construct on the Colter lease a pumping unit to be used to pump the Two-and-One well. Pursuant to the agreement made with Taylor, defendant caused the income from the promised royalty to be paid to plaintiffs less the deduction of its pro rata share of the maintenance and operation expense. These payments continued from the first sales on November 4, 1933, to and including April 20, 1935. After the latter date defendant refused to pay any part of the revenues earned by the royalty. Neither would he account to the plaintiffs therefor notwithstanding such revenues were at all times received by defendant until the well became a dry hole in August, 1938.

Upon finding the foregoing facts, the court ordered, by interlocutory decree that defendant make an accounting of the full amount due plaintiffs. Upon the accounting rendered under stipulation of the parties the court entered its final judgment. The question determined by the trial court was whether defendant was obligated to pay to plaintiffs the net revenues earned by the ½ of one per cent royalty in the Two-and-One well after April 22, 1935. We have to decide only whether in entering judgment for plaintiffs the trial court committed prejudicial error.

■ (1) Appellant argues that under the lease held by plaintiffs the lessee acquired no general estate in the land or any proprietary rights over it except to produce oil; that, therefore, the lease to the Two-and-One Oil Company of the surface of the Colter lot was *ultra vires*. Also, he insists that plaintiff corporation and not Wallace Taylor was the holder of the lease. But the granting clause of the lease held by the American Petroleum Company reads as follows: "that the lessor . . . leases to the . . . lessee" certain portions of the lands under lease by the lessor. Nowhere in the lease is

there any reservation of the surface rights in the lessor. The right of a lessee under a lease depends wholly upon the terms of the lease agreement. (20 Cal. Jur., sec. 7, p. 363; *Kline* v. *Guaranty Oil Co.*, 167 Cal. 476 [140 Pac. 1]; *Smith* v. *United Crude Oil Co.*, 179 Cal. 570 [178 Pac. 141]; *Lineberger* v. *Delaney Petroleum Corp.*, 8 Cal. App. (2d) 153 [47 Pac. (2d) 326].) Many oil leases are granted in which the activities of the lessee are restricted to that of exploring for and producing oil. But such is not the case in a lease granted by Colter and his associates. As to Taylor's agency for the American in granting the privilege of occupying his company's lot we need only to mention that Taylor's action was approved by Fairfield, his co-owner.

Appellant also contends that he had permission from Colter to use the surface of the latter's lot. This contention must fail for two reasons: (1) Colter was only one of the several owners of the property held under lease by the American Petroleum Company. If such permission had been of any value, it would have required the signatures of the McAdoos, the Wootens, Mr. Sadler and Mrs. Colter. If Colter had been the sole owner, any agreement made by him with his lessee prior to the execution of the written lease could not vary the terms of the lease. (Code Civ Proc., 1856.) (2) The testimony of Colter was that in his conversation with defendant with reference to the reservation of any surface rights, he said to defendant: "I care nothing about that; go down and get me a well, you can use it all." The attitude of Colter at the time of the execution of the lease to defendant explains the absence of any reservations of surface rights in the Colter lease. Neither did defendant in his assignment of the lease to the Odell Petroleum Corporation reserve any surface rights. Likewise the assignment by the last named corporation to the American Petroleum Company contained no reservation. The only entity possessed of power to grant the surface rights of the Colter property was the American Petroleum Company which at that time was the lessee in possession. The lessor was out of possession with no rights reserved.

Appellant argues that the assignment of the Colter lease by the Odell Petroleum Corporation to the American Petroleum Company inhibited the subletting of any portion of the premises without the written consent of the assignor. But a restriction against assignment is a personal covenant

made for the benefit of the lessor and does not run with the land. (*Laird* v. *McPhee,* 90 Cal. App. 136 [265 Pac. 501].)

In the event of an assignment of rights under a lease contrary to a covenant forbidding such assignment or subletting, such assignment is valid but the lessor alone has the option to forfeit the lease for the breach of covenant. (*Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420 [14 Pac. (2d) 758, 85 A. L. R. 917]; *Buchanan* v. *Banta,* 204 Cal. 73 [266 Pac. 547]; *Ruppe* v. *Utter,* 76 Cal. App. 19 [243 Pac. 715].) If the lessor ignores the breach the lease is valid and subsisting as to all other parties. *Ibid.*

Even though the inhibition against assignment or subletting contained in the assignment from the Odell Petroleum Corporation to the American Petroleum Company were binding upon the latter company, it was waived by the assignor. Since the Odell Petroleum Corporation with full knowledge of all the facts, permitted the occupancy of the Colter property by the Two-and-One Company in operating its pipe rack and slush pit on the Colter lease, it waived the requirement of a written consent to the tenancy of the Two-and-One Company. (*Delijian* v. *Rosenberg,* 134 Cal. App. 264 [25 Pac. (2d) 228].)

But defendant is estopped to challenge the title of the American Petroleum Company. The latter company as lessee in possession was the only power capable of preventing the occupancy of the Colter premises by the Two-and-One Company. The latter company made use of the premises as long as it had need of them. Having held quiet and peaceable possession for the term, the tenant is without authority to question the title under which he has occupied the premises. Odell, as the owner of 20 per cent of the production of the Two-and-One Company, was a tenant in common with the company and in the production of oil with the corporation. (*La Laguna Ranch Co.* v. *Dodge,* 18 Cal. (2d) 132 [114 Pac. (2d) 351].) It was for his immediate advantage to obtain the use of the surface rights on the Colter lease for the maintenance of the slush pit and pipe rack. Having made the agreement for the tenancy of his corporation the latter entered into and remained in undisturbed possession as tenant of the American Petroleum Company. The Two-and-One Company having continued its possession under the protection of its lessor, there is no theory upon which it can escape its contractual obligation to the American Petroleum Com-

pany. Under such circumstances the status of the lessor's interest is of no concern to the lessee. (*Ghiradelli* v. *Greene*, 56 Cal. 629.) The only occasion whereby the lessee might escape from its obligation to pay the rental promised at the beginning of the tenancy is for the lessor to repudiate his obligation as such lessor. The tenant is estopped from challenging the title of the lessor.

(2) The contention that plaintiffs are not the real parties in interest is based upon the facts: (1) that plaintiff corporation assigned the Colter lease to the Petrol Corporation February, 1936, 2½ years before the well went dry; (2) that by no writing did plaintiffs reserve any rental; (3) that the claim which forms the basis of plaintiffs' complaint was for the use and occupation of the Colter lot; (4) that the agreement was for the benefit of the Colter lease as well as for the Two-and-One well and that it was a covenant running with the land. Because of the recited facts, defendant insists that the assignment of the lease without reserving any part of the rentals was a transfer of those rentals. But it is not suggested that the American Petroleum Company sold the royalty in the Two-and-One well to the Petrol Corporation. That royalty was a separate item of property owned by plaintiff corporation and was not dependent upon its continued operation of the Colter lease. It could alienate the royalty or the lease at its pleasure. If it sold the lease and kept the royalty such sale did not becloud the title to the royalty. The Petrol Corporation has not asserted title to the royalty and justly so for it was not mentioned in connection with the sale of the Colter lease.

It is argued that there was no competent writing in evidence to prove the assignment to Taylor of the royalty which, it is claimed, would be necessary in view of the fact that the royalty was an interest in real property. This is immaterial. The gift of the income from the royalty to Mrs. Taylor was an intra-family matter. It presents no difficulty here because all parties concerned are satisfied and are plaintiffs and judgment creditors.

(3) The action is not barred by section 339 of the Code of Civil Procedure. Although the agreement was in parol and was made prior to November 4, 1933, and was repudiated in April, 1935, three years and two months before this action was filed, these facts are collateral to the main event, to wit, the assignment of a percentage of the produc-

tion of the oil well. Plaintiff corporation became owner of that percentage immediately upon defendant's occupancy of the Colter lot. Such ownership was ratified by the passing of each day with the Two-and-One 'in peaceable possession. The percentage·of production was to be payable during the productive life of the well,—an indefinite period. For that reason, it was an action to recover rents and royalties earned by realty (*Dabney* v. *Edwards,* 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822]; *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871]) and could not therefore be governed by section 339. The money payable under such an assignment of royalties is not the fruitage of the contract to assign. Defendant did not promise the money. Neither did he promise to pay for the use of the Colter lot. He agreed to assign the royalty interest in the well's production. He merely delivered the instrument by means of which plaintiffs became entitled to draw upon the bounty of the Two-and-One well. Such royalty was an incorporeal interest in real property "subject to the same requirements and protected by the same safeguard." (*La Laguna Ranch Co.* v. *Dodge, supra.*) The moneys paid plaintiffs from the sales of the well's production was received as an incident to ownership, the same as rent from any real property. The assignment of the royalty interest in the well of the Two-and-One Oil Company vested in plaintiffs an interest in the oil produced by that company. When the money for production was received by Two-and-One, it was held in trust for plaintiffs if the company had knowledge of defendant's assignment. (*La Laguna Ranch Co.,* v. *Dodge, supra; Dougherty* v. *California Kettleman Oil Royalties,* 9 Cal. (2d) 58 [69 Pac. (2d) 155]; *Schiffman* v. *Richfield Oil Co.,* 8 Cal. (2d) 211, 223 [64 Pac. (2d) 1081].) But it is admitted that the entirety of the revenues earned by the 20 per cent interest reserved to defendant upon his assignment of the Seeger lease to the Two-and-One Company was paid to him until the well became exhausted. Upon his receipt of the moneys he held ½ of 1 per cent of the total net sales for the use and benefit of plaintiffs for the reason that they owned ½ of 1 per cent interest in the realty which produced the oil sold.

As long as he held those moneys he was trustee for plaintiffs and was under obligation to account to plaintiffs for the moneys in his custody. Plaintiffs' action for an account-

ing and to enforce payment thereof is governed by section 343 Code of Civil Procedure; *Hannah* v. *Canty*, 175 Cal. 763, 768 [167 Pac. 373]. The period of limitation began on the date of defendant's repudiation of his trust, April, 1935, less than four years prior to the filing of the action.

(4) Defendant contends that the action is barred by the statute of frauds (sec. 1624 of the Civil Code) because the agreement to convey the fractional interest in the well was verbal. He argues that it was an "agreement to convey an interest in real property"; that defendant did nothing to take it out of the statute of frauds; that defendant's sole interest was his percentage in the production of the well; that Walt Hughes was sole owner of the Two-and-One Company, the assignee of defendant; that while Two-and-One constructed the pipe rack and pit on the Colter premises, appellant did nothing; that plaintiff expended no money and suffered no detriment. But defendant is blind to the significance of his own engagement. Plaintiffs performed all that was to be done for defendant in return for the royalty to be assigned to them by defendant. Upon his promise of the royalty they granted the use of their property to defendant's assignee and tenant which erected its pipe rack and slush pit thereon. Both of these were continuously used by Two-and-One as long as the well produced. Defendant acknowledged and verified the agreement with plaintiffs and admitted the fulfillment by plaintiffs of their obligation. Also, commencing with the first month of the well's production, defendant transmitted to plaintiffs monthly ½ of 1 per cent of the total net proceeds of the sales of the production and forwarded with each remittance a statement of the monthly earnings of the well. Such compliance of defendant with his agreement were acknowledgments by him that he held the ½ of 1 per cent of the net sales of the well's production in trust for plaintiffs. Such transmission of plaintiffs' share was not "part payment" of the price for the use by its tenant of the Colter lot. Defendant paid absolutely nothing after he exchanged his percentage of interest in the well for the use of the premises. His function thereafter was merely that of trustee and messenger to convey to plaintiffs their own moneys which were revenues from their own royalty interest. Under such circumstances, to allow defendant to escape his obligation by invoking the statute of frauds would be to defeat the just claim of a litigant by the perpetration of a fraud upon him. When a tenant comes

into possession of land under a lease, he is estopped to aver its invalidity under the statute of frauds. Otherwise the courts would promote injustice by approving a fraud inhering in the consequence of thus setting up the statute. (*Dutton* v. *Interstate Investment Corp.*, 19 Cal. (2d) 65 [119 Pac. (2d) 138]; *Seymour* v. *Oelrichs*, 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]; *Heffernan* v. *Davis*, 24 Cal. App. 295 [140 Pac. 716].) Whenever a party has, by his own declaration, act or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission be permitted to falsify it. (Code Civ. Proc., sec. 1962, subd. 3.) Defendant made his agreement with plaintiffs for the benefit of his own tenant, Two-and-One Oil Company. That tenant took possession of plaintiffs' premises and enjoyed peaceable possession as long as it had a need for the premises. By protecting the tenant in its occupancy of the Colter lot plaintiffs completed performance of their part of the contract. For more than seventeen months defendant faithfully fulfilled his obligation under the agreement. Such conduct removed the contract from the bar of the statute of frauds. Under such circumstances performance by plaintiffs of their part of the agreement was clearly induced by defendant's promise to assign the royalty and to pay its revenues. This fact taken with defendant's own subsequent behavior in fulfilling his part of the obligation bars the statute as a defense. (*Dougherty* v. *California Kettleman Royalties, Inc., supra.*) There is no merit in its contention that plaintiffs failed to plead an estoppel. The answer pleads the statute of frauds and a replication thereto was not required under our practice.

(5) Since the ultimate facts found by the court are such as to create an estoppel to assert the statute of frauds, they constitute a sufficient finding on the issue as to whether the agreement was barred by the statute. After finding that the agreement was made, the court found that plaintiffs fully met all their obligations under the contract: that the Two-and-One Oil Company used plaintiff's land, erected a pipe rack and slush pit; that these were actually used until the well was completed (as provided by the agreement); and that defendant actually paid the earnings of the royalty in accordance with the terms of the agreement for more than 17 months.

 (6) It is contended that the evidence was insufficient to support the finding that the well produced continuously after November 4, 1933. That is immaterial for the reason that the accounting made by defendant and accepted by plaintiffs and entered into the judgment shows that production ceased in October, 1938. It is suggested that the agreement for the assignment of the royalty is not supported by a consideration. This is cured by the other findings, supported by the evidence, that the consideration for the royalty was the occupancy of the Colter lot held under lease by plaintiff corporation which consented to the occupancy by the Two-and-One Company. While Taylor negotiated with defendant the plaintiff corporation provided the consideration. As half owner and manager of the American, Wallace Taylor's agreements on behalf of his company were binding, particularly so after it had accepted the benefits of his transaction. This disposes of the criticism of the finding that defendant promised to pay plaintiffs the royalty although Taylor made the agreement.

It is suggested that the finding that defendant received the proceeds of the royalty subsequent to April 20, 1935, is unsupported by the evidence. But under the accounting stipulated to, defendant accounted for the moneys earned by the royalty after April 20, 1935. The attack upon the findings that Taylor was entitled to the income from the royalty by reason of the assignment from plaintiff corporation as inconsistent with the judgment for all three plaintiffs is without merit for the reason that the judgment runs in favor of all three plaintiffs.

All other criticisms of the findings have been answered by the discussions of other assignments.

 (7) Defendant argues that the agreement to assign the royalty to plaintiffs was void because no permit had been issued by the Division of Corporations for its transfer by defendant. The Corporate Securities Act was enacted to protect the investor, not the seller. While a sale or agreement to issue may be void, if violative of the act, at the behest of the purchaser, not in *pari delicto*, it was not the purpose of the legislature to confer an advantage upon the seller of a security. If it was wrong for defendant to sell the royalty, he cannot take advantage of his own wrongful act to avoid his obligation after deciding that he preferred to repudiate it.

(Civ. Code 3517; *Western Oil & Ref. Co.* v. *Venago Oil Co.,* 218 Cal. 733 [24 Pac. (2d) 971, 88 A. L. R. 1271].)

■■■ Contention is made that it was error to admit parol testimony to prove the assignment of the royalty by plaintiff corporation to Wallace Taylor. Whatever of merit may inhere in such assignment is dispelled by the facts: (1) that the Taylors had received the income from the royalty prior to defendant's repudiation of his agreement, and (2) that the American Petroleum Corporation, owned by Taylor and Fairfield, is also one of the plaintiffs and both of its owners consented to the gift of the income from the royalty to Mrs. Taylor. If there had been no proof of an assignment of the royalty to Mrs. Taylor, the evidence abundantly establishes that the management and owners of American Petroleum Corporation made her a gift of its revenues.

All other assignments are disposed of by the foregoing discussion.

Judgment is affirmed.

Wood (W. J.), J., concurred.

McCOMB, J., Dissenting.—I dissent:

From a judgment in favor of plaintiffs after trial before the court without a jury in an action to recover sums alleged to be due for breach of a contract to pay certain percentages of royalties received by defendant, the latter appeals.

Viewing the evidence in the light most favorable to plaintiffs (respondents), so far as material here the essential facts are:

Defendant obtained two separate oil leases, one on property owned by a Mr. Colter and others, hereinafter referred to as the Colter lease, and the other upon property owned by Mr. Seeger and others, hereinafter referred to as the Seeger lease. The two properties are adjacent. Defendant assigned the Colter lease to Odell Petroleum Corporation, which in turn assigned it to the American Petroleum Company, reserving unto himself a 30% royalty interest. He assigned the Seeger lease to the Two-and-One Oil Company, reserving unto himself a 20% royalty. The Seeger property was too small to permit the erection of an oil derrick and the necessary appurtenances, and defendant obtained permission from the American Petroleum Company for the assignees of the

Seeger lease to use a portion of the surface of the property covered by the Colter lease. Defendant agreed to pay Mr. Wallace Taylor, one of the plaintiffs, one-half of one per cent of the production from the Seeger lease for such permission. The American Petroleum Company and the Two - and - One Oil Company erected on the Colter property certain oil well operating facilities, which were used by both companies. Defendant paid Mr. Taylor one-half of one per cent of the production from the Seeger lease from November, 1933, until April, 1935. He then refused to make further payments. Thereafter plaintiffs sued to recover such percentage. Among other defenses defendant by his answer pleaded the Statute of Frauds, and evidence was introduced tending to prove that the alleged agreement for the payment of royalty was an oral one and for the transfer of an interest in real property. The trial court failed to make a finding upon the issue raised by this defense.

This is the sole question necessary for us to determine:

*Where there is substantial evidence, if believed by the trial judge, to sustain defendant's plea that the statute of frauds bars a recovery by plaintiffs, is it prejudicial error for the trial court to fail to make a finding on this issue?*

This question must be answered in the affirmative. The law is settled in California that it is reversible error for the trial court to fail to make a finding upon a material issue properly raised by the pleadings if, as in the instant case, there is any evidence which would support a finding in favor of such defense (*Due* v. *Swartz*, 22 Cal. App. (2d) 217, 218 [70 Pac. (2d) 716]; *Lyden* v. *Spohn-Patrick Co.*, 155 Cal. 177, 182 [100 Pac. 236]; *Knoch* v. *Haizlip*, 163 Cal. 146, 153 [124 Pac. 998].)

There is no merit in plaintiffs' assertion that defendant is estopped from invoking the defense of the statute of frauds, for the reason that estoppel as to any defense which would otherwise be available to the defendant (appellant) under the facts stated in a complaint may not be relied upon by the plaintiff (respondent) unless the estoppel is pleaded (*Cohen* v. *Metropolitan Life Ins. Co.*, 32 Cal. App. (2d) 337, 347 [89 Pac. (2d) 732].) Therefore, since in the instant case estoppel was not pleaded in plaintiffs' complaint as amended, the plaintiffs may not rely thereon to defeat defendant's defense of the statute of frauds.

For the foregoing reasons in my opinion the judgment should be reversed.