[Civ. No. 19119.   Second Dist., Div. One.   June 8, 1953.]

THE HANCOCK OIL COMPANY OF CALIFORNIA (a Corporation), Plaintiff and Respondent, v. MEEKER-GARNER OIL COMPANY (a Corporation) et al., Defendants and Appellants; MADOLYN M. CHRISTOPHER, Intervener and Appellant; D. A. MILLS et al., Interveners and Respondents.

Jennings & Belcher, Krystal & Paradise and Samuel Lackman for Defendants and Appellants.

Ball, Hunt & Hart and Joseph A. Ball for Intervener and Appellant.

Harold A. Black, Philip K. Verleger and McCutchen, Black, Harnagel & Greene for Plaintiff and Respondent.

Kenneth Sperry for Interveners and Respondents.

DRAPEAU, J.—On May 17, 1947, a community oil and gas lease, hereinafter called the Chalker lease, was executed in counterparts by J. M. Chalker, as lessee, and by the owners,

as lessors, of certain lots embraced within Blocks 1 to 6, inclusive, of Tract 4143, partly located in the city of Signal Hill and partly in the city of Long Beach.

On January 16, 1948, Chalker and wife assigned said lease to The Hancock Oil Company of California, hereinafter referred to as Hancock. On January 31, 1950, the Chalker lease was ratified and confirmed by Hancock and the various owner-lessors, and the time for commencing drilling thereunder was extended.

By a rider attached to the Chalker lease and dated October 1, 1951, Hancock expressly agreed not to erect derricks or install any oil well machinery, or in any way disturb the surface of any real property located in Blocks 1, 2, 3, 4, or 6 of Tract 4143.

Madolyn M. Christopher, plaintiff in intervention, is the owner of Lot 8, Block 2 of said Tract 4143. She did not join in the Chalker lease so that her lot is not included therein. However, it is surrounded by lots which are covered by the lease, and it lies in a restricted zone of the city of Signal Hill upon which surface drilling is prohibited by ordinance.

Among the lessors of the Chalker lease were defendants Rabinowitz and Budnick, owners of Lots 5 and 6, Block 2 of the tract covered by the lease. These lots adjoin Lot 8 and are located in a commercial zone where drilling is permitted.

On July 27, 1951, defendant Meeker-Garner Oil Company entered into an oil and gas lease with Mrs. Christopher covering Lot 8. On the same day, said oil company obtained an easement from Rabinowitz and Budnick authorizing the erection of a derrick on the southerly 45 feet of Lots 5 and 6, for the purpose of slant drilling an oil well through the surface thereof into Lot 8.

In August, 1951, Meeker-Garner procured a drilling permit from the city of Signal Hill, placed equipment on Lots 5 and 6, and on September 4, 1951, commenced drilling a well from the surface of Lot 5. The well was slant-drilled to a depth of 390 feet into Lot 5, where it entered Lot 8. It was the intention to complete it by bottoming it entirely on Lot 8.

At this point, Hancock, as lessee under the Chalker lease, filed its complaint for an injunction against defendants Meeker-Garner Oil Company, Rabinowitz and Budnick, perpetually restraining them from proceeding further with their

drilling on Lots 5 and 6, and requiring them to fill the hole already drilled.

Mrs. Christopher obtained leave to intervene and aligned herself with defendants.

D. A. Mills and those named in the heading hereto as owner-lessors of various lots covered by the Chalker lease, were granted permission to file a complaint in intervention. They aligned themselves with Hancock and against defendants.

A preliminary injunction issued halting further drilling operations pending trial.

Among other things, the trial court found that the well constructed by defendants on Lot 5 "will interfere with the operations of plaintiff, and with the extraction of oil by plaintiff under the Chalker lease"; that said well "does not create any physical obstruction to any of the existing or presently contemplated operations of plaintiff, but that said well will, if completed and operated, by reducing the production of the wells constructed by plaintiff under said Chalker lease, frustrate the object of plaintiff's operations and of the said Chalker lease, to-wit: the achievement of maximum production under said Chalker lease."

Further that, unless defendants are restrained, Hancock and plaintiffs in intervention will suffer irreparable injury, for the reasons that defendants' well (1) constitutes a continuing trespass; and (2) "will drain the pool underlying the lands covered by the Chalker lease, which is the same pool as underlies Lot 8, and will materially reduce the production of plaintiff's wells under said Chalker lease in an amount which is impossible definitely to ascertain. That by virtue of said drainage, plaintiffs in intervention will suffer a substantial loss of royalties which are and will be impossible to ascertain."

From the judgment which followed perpetually enjoining defendants from constructing, maintaining or operating any oil or gas well within the boundaries of said Lots 5 and 6, and requiring them to fill and abandon the well already drilled, defendants Meeker-Garner Oil Company, Irving and Rose Rabinowitz, Mae 'Geller Budnick, and intervener Madolyn M. Christopher appeal.

The pertinent paragraphs of the lease and a rider thereto attached read as follows:

"1. WHEREAS, Lessors believe that their interests will be best furthered and conserved by joining their respective properties in this 'Community Oil Lease' under the terms of

which their said property may be jointly explored and developed for oil, gas and kindred substances, and all Lessors may share in the royalties from the wells wherever drilled on said land, and they now desire to 'pool' their interests in such manner:

"2. Now, THEREFORE, and in consideration of the agreements hereinafter specified, Lessors . . . each for himself and with all of the others do hereby lease unto Lessee exclusively the real property described opposite the names of each of said Lessors for the purpose of exploring, drilling and operating for oil, gas, gasoline and other hydrocarbon substances and taking, storing, removing and disposing of same with the right to use for such purposes and without cost to Lessee, such oil, gas and water from said land as may be necessary or convenient in Lessee's operations and in drilling for and producing oil and gas from said premises, together with rights of way, easements, and servitudes for pipe lines . . . together with every other right and privilege incidental to the use of said land in connection with the drilling, operating, producing, refining, marketing and storing of oil and gas or the hydrocarbon substances produced; all upon the terms, covenants and conditions hereinafter contained.

"3. LESSOR WARRANTS, covenants and agrees that Lessee's possession of the demised premises shall be continuous, sole and exclusive, subject only to the right in Lessor to use, occupy or lease the surface of the demised premises or any part thereof for agricultural, horticultural, dairy, stock raising or similar purposes, which shall not interfere with Lessee's operations hereunder. The use of any dwelling on the demised premises for residence purpose is hereby reserved by the Lessor."

The rider dated October 1, 1951: "Lessee expressly agrees that it will erect no derricks or install any oil well equipment machinery, or in any way disturb the surface of any real property located in Blocks One (1), Two (2), Three (3), Four (4), or Six (6), of said Tract 4143, Los Angeles County, California."

It is appellants' contention that the Meeker-Garner well, as drilled—slanted from the surface of Lot 5 into Lot 8 where it was to be bottomed—does not constitute a trespass against either Hancock or the owner-lessors. This for the reason that the exclusive right to produce oil and gas under the Chalker lease is limited to production by Hancock from wells bottomed under the surface of the lots covered by that lease.

Consequently, appellants' well bottomed on an adjoining lot does not interfere with the operations under said lease.

In support of this stand, appellants cite *Brookshire Oil Co.* v. *Casmalia etc. Co.*, 156 Cal. 211, 218 [103 P. 927], which holds that an owner-lessor may grant to a third party the right to lay and maintain an oil pipe line through land covered by an oil and gas lease "so long as it does not interfere with the actual operations of the defendant (lessee) under the lease."

The facts in the cited case may be easily distinguished from those here involved. In the Brookshire case, the lessee did not claim that the pipe line interfered with its operations for discovery of oil on the premises. The defense was founded upon the theory that under its agreement lessee had the sole right to lay pipe lines in the land for any or all purposes and in all parts of it, and that any other pipe line laid in the land was a trespass on that right. It was there stated (p. 217) :

"The right given is limited to the use of the land for the purpose of producing the minerals. Any use by the owner, or others operating under him, which does not affect the search for and production of the minerals is lawful and the defendants (lessees) have no right to interfere with such use, except when in the actual exercise of the lessees' rights under the lease, the other occupation or use shall be found adverse, injurious, or conflicting."

In the instant case, Hancock established a drilling island on Block 5 and agreed not to disturb the surface of any other lots in the remaining blocks covered by the lease.

Respondents urge that the operations of Meeker-Garner are a deliberate use of Hancock's land as a means of drilling a well to the damage of Hancock's production under the Chalker lease.

It was stipulated at the trial:

"That the present hole of the defendant Meeker-Garner Company on Lots 5 and 6 does not presently interfere with any of the existing operations of plaintiff in the sense of creating any physical obstruction thereto, and will not do so insofar as contemplated future activity of plaintiff is concerned."

It was further stipulated "That a well bottomed under Lot 8·would drain oil from the same pool as underlies the Chalker lots and, if produced, would reduce the amount of oil which would otherwise be recovered under the Chalker lease, but the amount thereof cannot be accurately measured."

The basic interference here is the draining of oil by the Meeker-Garner well from the common pool, thereby reducing the amount recoverable under the Chalker lease, with resultant loss to all the owner-lessors under that lease.

This court is of the opinion that the holding in *Union Oil Co.* v. *Domengeaux,* 30 Cal.App.2d 266, 270 [86 P.2d 127], is decisive here. In that case the defendants drilled from their land through land under lease to plaintiff oil company, and bottomed the well under land which was under lease to General Petroleum Company, immediately adjacent to plaintiff's land, so closely that it drained it. General Petroleum was not a party to the action so that its interests were not involved. As to plaintiff's interests, it was contended that no damage was caused.

It was there stated, ''Defendants raise another point with respect to the sufficiency of the evidence, which point requires further consideration. They contend that even assuming that they were chargeable with trespassing the damages were 'too trifling and inconsequential' to justify the granting of injunctive relief. It appears to be defendants' theory that an injunction will issue only upon a showing of irreparable injury. *In this connection, defendants entirely ignore the testimony showing that their well, after trespassing upon the property of the several plaintiffs, was bottomed at a point where it was producing oil from the property of plaintiff Union Oil Company.* But even in the absence of such showing, we are still of the opinion that there is no merit in said contention. *The trespass here was a subsurface trespass in an oil and gas producing area.* It was conceded by plaintiffs on the trial that they could make no such showing as to actual damage as would justify an award of damages in any specific amount. The difficulty in making such a showing is recognized and discussed in the recent decision in *Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 at page 254 [73 P.2d 1163]. Such concession, however, does not justify the conclusion that plaintiffs had suffered no injury. It has heretofore been held in a case involving a subsurface trespass by way of tunneling that 'the injury is irreparable in itself.' (*Richards* v. *Dower,* 64 Cal. 62 [28 P. 113]. Furthermore, we believe that the evidence before us brings the cause within subdivision 2 of section 3422 of the Civil Code providing for the issuance of an injunction 'where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.' It appears from the authorities cited

by the parties that each case must stand upon its own facts in determining whether equitable relief should be granted and defendants have not called to our attention any authority in this jurisdiction holding that such relief should be denied under the circumstances before us. In some cases, notably those involving inconsequential surface encroachments, injunctive relief has been denied ordinarily upon the application of the maxim *de minimus* but in such case it is obvious that there was no appreciable damage or at least that the extent of such damage was easily ascertainable. *But here we are dealing with a subsurface trespass in an area where it is extremely difficult to ascertain the extent to which plaintiffs have been and will in the future be damaged by defendants drilling through their oil producing properties. Under such circumstances, we believe the circumstances warrant the interposition of a court of equity and particularly where the trespass is of a continuing nature and might ripen into a prescriptive right.''* (Emphasis added.)

██  Explicit in the cited case is the principle that one who drills through leased land to cause drainage from it violates the lessee's rights and commits a trespass against him. Such conduct being a trespass against the lessee, it can make no difference that the owner-lessor has consented.

██  In *Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 825 [129 P.2d 383], the Supreme Court recognized that a landowner cannot lawfully cause drainage from the leased land when it observed:

"Every contract contains an implied covenant on the part of each party not to prevent or hinder performance by the other party. (Williston on Contracts, vol. 5, § 1293A.) Upon fundamental principles, the law will not allow one to claim royalties under a community lease and at the same time diminish the amount of oil which might otherwise be recovered for the common benefit of all the lessors.''

In the later case of *Tanner* v. *Olds*, 29 Cal.2d 110, 115 [173 P.2d 6, 167 A.L.R. 1219], the court determined that this principle did not apply as between lessors, as was assumed in *Tanner* v. *Title Ins. & Trust Co., supra,* and confined it to cases as between lessee and lessor. As so confined, the stated principle forbids the conduct of appellants Rabinowitz and Budnick.

Neither can their conduct be justified under the terms of the Chalker lease.

By the third paragraph thereof, Hancock is given exclusive possession of the leased premises, both surface and subsurface, subject only to the right of lessors to use the surface for certain specified purposes.

With respect to the rider in which Hancock agreed not to disturb the surface of any block covered by the lease except Block 5, the court found:

". . . That the purpose of said rider was to prevent interference by Lessee's oil and gas operations with the existing surface uses; that said rider was not intended as, and did not operate as a renunciation of the estate otherwise conveyed by said Chalker lease, and/or a giving back to, or a reservation to the Lessors, or any of them, of the right to use or to permit others to use the surface or the subsurface of said land for oil drilling or production purposes."

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.