[Civ. No. 5441.   Fourth Dist.   July 18, 1957.]

DONALD E. TIBBS et al., Appellants, v. SMART AND FINAL IRIS COMPANY (a Corporation) et al., Respondents.

Ashfield & Stennett and Gaylord L. Henry for Appellants.

Lindley, Lazar & Scales for Respondents.

GRIFFIN, J.—Plaintiffs and appellants Donald E. Tibbs, Frances E. Luecker and Ann M. Hoffman brought this action against Smart and Final Iris Company, J. N. Peterson, president, and L. N. Lanier, agent, defendants and respondents, for specific performance, alleging that defendant Smart and Final Iris Company owned an unimproved tract of land in San Diego

(describing it) ; that on October 7, 1955, a certain counteroffer to sell was submitted by defendant Peterson to one Humphrey Lane, agent for plaintiffs, which counteroffer was repeated on October 12th by defendant Lanier, agent for defendant Smart and Final Iris Company, offering to sell to plaintiffs the described property for $18,500, with $2,500 cash down payment and final conveyance subject to and contingent upon the parcel being zoned for an off-sale liquor establishment; that on October 13, 1955, plaintiffs' agent, Lane, accepted said offer by letter addressed to defendant Lanier; that plaintiffs are able to perform, and by telegram on October 15th, repeated their willingness and ability to perform, and demanded defendants' conveyance according to the terms of ''written agreements hereinbefore set forth''; and that defendants refused. Specific performance is sought. The contents of the telegram and letters were not set out in nor attached as exhibits to the complaint.

By answer, defendants admit the agency of Lanier; admit that on October 7, 1955, the company wrote a letter to Lane, and on October 12th, Lanier, as agent, wrote a letter to Lane. The contents of these letters were not set forth. Defendants denied all other allegations of plaintiffs' complaint.

On December 15, 1955, defendants moved for summary judgment, based on the attached affidavits of Peterson and Lanier, and the files in the case. On January 4, 1956, plaintiffs moved to amend the complaint and to set forth in full the letters to which reference was made. Plaintiffs' counsel filed his counter-affidavit in opposition to the motion for summary judgment, alleging these letters were not in his possession at the time of the filing of the complaint; that he is now ''convinced that these letters, in their entirety, contain an offer and acceptance forming a contract of sale.'' Copies of the letters were attached thereto. Apparently, on the hearing of the motion for summary judgment it was stipulated between counsel that plaintiffs might amend their complaint by incorporating copies of these letters. A full hearing was then had on the motion. Plaintiffs' complaint was, by judgment of the court, dismissed on the ground that no triable issue of fact was presented. This appeal is from that judgment. There is no record of any oral proceedings had before the trial court except the clerk's transcript.

The letters used as exhibits show one dated August 5, 1954, from Smart and Final Iris Company, signed by Lanier and directed to Lane, stating:

"In reply to your letter of August 2nd relative to price of property, we feel we should net $18,000.00 to us, cash.

"We believe this will answer your question as to commission."

One dated September 10th, from Lane to Lanier recites:

"Another realtor has asked me to submit an offer to you for the property at 36th and University. The offer which he has is $12,500 with $2,500 down and the balance at $100.00, or more, per month including interest at 5%. He has a check for $500. It is contingent upon approval of the premises for issuance of required license for sale of package liquor.

"I told him I thought this was a little low but he desired that I submit it anyway. He said that possibly you could make a counteroffer. I assume from this that he anticipates that his party will raise their offer."

One from Smart and Final Iris Company by Elmer Gilbert, dated September 15, 1955, reads:

"As Mr. Lanier has been ill for some time I have been unable to answer your letter at an earlier date.

"I have taken this matter up with him, and he informs me the price of the . . . property in question is $17,500, from which we will pay a normal realtor's commission. As for the offer proposed, we cannot accept this, for obvious reasons . . ."

One dated October 1, 1955, from Lane to Smart and Final Iris Company reads:

"About three weeks ago I wrote to Mr. Lanier about an offer to purchase the corner of 36th and University. The figure was low and Mr. Lanier was sick and a Mr. Gilbert answered and said that $17,500 was the price.

"This offer that was too low was made through the cooperation of another realtor in San Diego and he has been working with his client all of this time in an effort to get him up.

"He has submitted another offer and he has a check as a deposit. This offer is as follows: Total price, $17,500. $2,500 down and the balance at $150 per month with 5% interest. It is predicated on being able to get the approval of the Board of Equalization for a package liquor store.

"Personally I feel that you should give this some serious consideration for it is the only good offer that you have had on this corner since you purchased it in June of 1954. I know that many other Realtors contacted Mr. Lanier relative to this property so I have not been the reason that it has not sold.

"I imagine that during the past year the taxes on the cor-

ner were in the neighborhood of $300 and the interest on $15,000 at 5% would be $750 so it has cost over $1,000 just to hold it.

"I would appreciate hearing from either you or Mr. Gilbert as soon as possible as the purchaser is quite anxious to know one way or another."

One dated October 3, from Peterson to Lane recites:

"Replying to your letter of October 1st relative to the property . . . please be advised that the lowest price we will accept is $17,500 net to us.

"We would be willing to accept the proposition as outlined in your letter but, as stated above, the price must be net to us with no commission.

"We have had a sign painted which will be placed on the corner stating that the property is for sale by the owner and to inquire next door. Our manager will quote a price of $18,000 cash. We are willing to pay a real estate commission on the price of $18,000 cash.

"We feel that you should have this information so that you will know what the score is.

"We are sorry that we are not interested in the proposition as outlined in your letter other than on the above basis."

One dated October 5, from Lane to Smart and Final Iris Company recites:

"In reading your letter of October 3rd, paragraph 2, quote: 'We would be willing to accept the proposition as outlined in your letter but, as stated above, the price must be net to us, with no commission,' I understand that the terms, as outlined in my letter to you of October 1st, are acceptable to you, except that you want $17,500 *net*.

"Please let me know if I am correct in interpreting your letter . . ."

One dated October 7th, from Peterson to Lane, reads:

"Replying to your letter of October 5, relative to the property . . . we thought that our statement to you was quite clear in our letter of October 3 but, in order to clarify it, we are making the following commitment:

"We are willing to accept an offer for this property of $17,500.00, payable $2,500 down, and the balance at $150.00 per month with 5% interest. This price is net to us with no real estate commission.

"Trusting that this explanation will be perfectly clear to you, we remain . . ."

One dated October 10, from Lane to Smart and Final Iris Company reads:

"I did not understand your previous letter dated October 3rd, as on September 15th I received a letter from Mr. Elmer Gilbert in which he stated, quote:

" 'As Mr. Lanier has been ill for some time I have been unable to answer your letter at an earlier date.

" 'I have taken this matter up with him, and he informs me the price of the . . . property in question is $17,500, from which we will pay a normal realtor's commission.'

"I gave Mr. Gilbert's letter to Mr. Parker, the other realtor, and he showed the letter to his client. He told his client that if he raised his offer to $17,500 as per Mr. Gilbert's letter, he would have the property if the terms were acceptable. Mr. Parker has a $500.00 check as deposit on this property and a signed offer at $17,500 with the terms that you said in your letter that you would accept.

"For that reason I did not exactly understand your letter of October 3rd.

"This has placed me in a most embarrassing position. I am President of the San Diego Realty Board and Mr. Parker is a member of our board. I assured him on the strength of Mr. Gilbert's letter that Mr. Lanier would take $17,500, from which he would pay a commission. Mr. Gilbert's letter was perfectly clear on that.

"I would appreciate it very much if you would discuss this with Mr. Lanier and let me know as soon as possible your decision. Meanwhile Mr. Parker is holding the $500.00 check."

One dated October 12th, from Smart and Final Iris Company, by Mr. Lanier, to Lane reads:

"Yesterday I returned to the office for a few hours work each day and this morning Mr. Peterson gave me your letter to him of October 10th.

"I will undertake to straighten you out relative to this property.

"We will accept $17,500. net to us on the terms as specified by Mr. Parker. The $17,500. price that Mr. Gilbert gave to you in my absence is the cash price. For your information, we will accept $17,500 and pay the regular commission, but it must be a cash deal.

"I now can be contacted here at our office and if you will kindly correspond with me here relative to this property, I will appreciate it."

One dated October 13th from Lane to Lanier reads:

"Mr. Parker has delivered to me the following offer and has a deposit of $500.00, in accordance with your letter of October 12, 1955:

"Total price:        $18,500
"Down payment:     2,500
"Balance payable:–         $160 or more per month, including interest at 5%

"Commission: 5% on Sales Price

"Subject to obtaining approval for package liquor store on property.

"I would appreciate it if you would either wire your approval or write me Special Delivery."

From his affidavit it appears, without conflict, that Lanier, on October 14, telephoned Lane that Smart and Final Iris Company does not accept the offer contained in the letter of October 13th. This action followed.

In a proceeding such as this, if the affidavits and pleading show that there is no enforceable written contract, there is no issue requiring a trial, and a summary judgment is proper under section 437c of the Code of Civil Procedure. (*Ajax Holding Co.* v. *Heinsbergen,* 64 Cal.App.2d 665 [149 P.2d 189] ; *Gale* v. *Wood,* 112 Cal.App.2d 650 [247 P.2d 67].) We will therefore direct our attention to this limited question. It is the rule that in considering affidavits pro and con when such a motion has been made, those of the moving party are to be strictly construed, those of the party opposing the motion are to be liberally construed, and if there be a conflict the affidavits of the opposing party must be accepted as true. (*Gibson* v. *De La Salle Institute,* 66 Cal. App.2d 609 [152 P.2d 774] ; *Raden* v. *Laurie,* 120 Cal.App.2d 778 [262 P.2d 61].)

There appears to be no conflict in the affidavits or otherwise as to the dealings between the parties, and there is no conflict in the evidence in respect to the terms of the various offers made. They are set forth and are not in any respect ambiguous or uncertain so as to require or allow any fact to be established by extrinsic testimony in order to determine their effect. Accordingly, a question of law is presented. (*Green* v. *Soule,* 145 Cal. 96, 100 [78 P. 337] ; *Ellis* v. *Crawford,* 39 Cal. 523, 527.)

By the letter of August 5th Lane was informed that $18,000 net cash, to Smart and Final Iris Company was the list price. On September 15th Gilbert, as agent, rejected the offer of September 10th, and informed Lane the price was

$17,500, and that a commission would be paid. It is true the letter does not indicate whether it was cash or terms. Lane then on October 1st, made an offer of $17,500 on certain terms and a condition that approval for a liquor store permit be obtained. Lane was then informed that Smart and Final Iris Company rejected his proposition but reiterated that the price of $17,500 was satisfactory on the terms outlined, if no commission was paid. However, they stated they would be willing to pay a real estate commission on a price of $18,000. On October 5th Lane asked for a verification of the price at $17,500 net, and on October 7th received a verification and an additional offer at $17,500 net, on the terms indicated, with no allowance for commission. On October 10th Lane again quoted from Gilbert's letter of October 3rd and asked for clarification. On October 12th clarification was furnished to Lane accordingly. It conclusively appears that on October 13th Lane made a new and different conditional offer on different terms which, in effect, abrogated or modified the previous offers. It sought a confirmation or approval by Smart and Final Iris Company of the new proposal. This was rejected. No mutual binding and enforceable agreement of sale existed between the parties on the terms indicated. (*Azevedo* v. *Davidson*, 49 Cal.App. 443 [193 P. 594]; *Niles* v. *Hancock*, 140 Cal. 157 [73 P. 840].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.