[Civ. No. 25150. Second Dist., Div. Two. Aug. 9, 1961.]

WILLIAM SIEMON et al., Appellants, v. G. M. RUSSELL, Respondent.

M. Lewis Lehman for Appellants.

Roy B. Woolsey for Respondent.

FOX, P. J.—This is an action for declaratory relief. The trial court granted defendant's motion for summary judgment. Plaintiffs have appealed.

The property here in question is located at Vermont Avenue and 125th Street, in the city of Los Angeles, consists of a parcel of 4 acres of vacant land, and is situated within the oil-producing area known as the Athens Field. In 1947 the then owners of the property executed an oil and gas lease with defendant Russell. As a result, he has drilled one well which is still producing at the rate of nine or ten barrels of oil per day. The lease provides: "The possession by the Lessee of said land shall be sole and exclusive, excepting only that the Lessor reserves the right to occupy said land or to lease the same for agricultural, horticultural, or grazing uses, which uses shall be carried on subject to, and with no interference

with, the rights or operations of the Lessee hereunder." The lease further provides that the lessee may construct, maintain, etc., pipelines, tanks, machinery, buildings and other structures which the lessee may desire in carrying on its business and operations on said land or on adjoining or neighboring premises operated by lessee, with the further right to the lessee to erect and operate a plant, with all necessary appurtenances, for the extraction of gasoline from gas produced from said land or other premises in the vicinity of said land, together with rights-of-way for ingress and egress and passage over said land, for any or all of the above-mentioned purposes.

The property has been sold to the plaintiffs, who want to subdivide it into 30 residential lots. They propose to construct dwellings on all of these lots except such as are necessary for the continued operation of defendant's well (not to exceed 10%). The owners are receiving approximately $109 a month royalty from the operation of the well. By reason of the development of the area surrounding this 4-acre tract, the subject land has become much more valuable for residential uses and would produce a greatly enhanced return to the owners if it could be subdivided. Defendant, without filing any answer, filed a motion for summary judgment supported by his affidavit, to which he attached a photostatic copy of the lease.

An affidavit in opposition was filed by plaintiff William Siemon. He states that the property faces on four streets; that on three sides dwellings have been erected in the price range of $12,000 to $15,000 and that on the fourth side the county is in the process of acquiring land for a public park. He further states that since the oil and gas lease was entered into in 1947 by Russell and plaintiffs' predecessors, a major portion of the oil wells in the Athens Field have been abandoned and that currently very little production is being obtained therefrom; that the well on the subject property is known as a "stripper" well, producing nine to ten barrels per day; that many new homes have been built within a radius of 100 to 300 feet from the well here in question, and that the character, neighborhood and value of the property have all substantially changed since this lease was executed in 1947. Siemon asserts that it is economically unfeasible to drill any more wells on plaintiffs' property and that changes in the character of the neighborhood have led the city to impose rather stringent requirements in connection with the drilling of wells on this and adjacent property, and that it would be

practically impossible for Russell or anyone else to drill another well on this property. He attaches as an exhibit a letter from the zoning administrator, indicating that undoubtedly more severe restrictions would be effected in the event a permit were issued to drill additional wells on this property.

It is not disputed that the summary judgment procedure is appropriate in declaratory relief actions. ''The propriety of the application of declaratory relief lies in the trial court's function to render such a judgment when only legal issues are presented for its determination. [Citations.]

The judgments in the instant cases comport with the requirement of *Essick* v. *City of Los Angeles* (1950), 34 Cal.2d 614, 624-625 [213 P.2d 492], that in a declaratory relief action, the court should decree that 'plaintiffs are not entitled to the declarations in their favor' rather than enter a judgment of dismissal.'' (*Spencer* v. *Hibernia Bank,* 186 Cal.App. 2d 702, 712 [9 Cal.Rptr. 867].)*

There is another preliminary, procedural issue as to whether a motion for summary judgment may be made prior to the filing of an answer. Before 1957, section 437c, Code of Civil Procedure, provided that a motion for summary judgment might be made by either party after an answer was filed. In that year the section was amended. All reference to the filing of an answer was eliminated, and it was provided that the motion shall be considered a pleading. In a footnote, in *Lincoln* v. *Didak,* 162 Cal.App.2d 625, at page 630 [328 P.2d 498], the court correctly observed that the amendment permits the making of a motion for summary judgment without the necessity of filing an answer to the complaint.

The basic question is whether any triable questions of fact were presented which, if decided in plaintiffs' favor, would entitle them to use the property for subdivision purposes. (*Tibbs* v. *Smart & Final Iris Co.,* 152 Cal.App.2d 618 [313 P.2d 636]; *Poochigian* v. *Layne,* 120 Cal.App.2d 757 [261 P.2d 738].) Plaintiffs claim there are the following controversies to be resolved: (1) Whether plaintiffs, by sub-

---

*The judgment in the instant case states: ''It is hereby ordered, adjudged and decreed that under and pursuant to the . . . lease defendant is lessee and plaintiffs' ownership is subject to such lease and plaintiffs may not use or occupy any of the . . . described property for residential purposes during the term thereof except such residence as may be incidental to an agricultural, horticultural or grazing use of said land. . . . It is further . . . adjudged that defendant . . . is not at this time under any duty to quitclaim to plaintiffs any surface rights to any portion of the above described property.''

dividing the acreage, would interfere with the portion thereof used by defendant, or the balance of the land which defendant was not using and had never used; (2) whether it was the intent of the original parties to reserve the surface rights to the lessor, or whether it was their intent to restrict the use of said surface to agricultural, etc., purposes regardless of the changed circumstances not contemplated by lessor and lessee; (3) whether or not the changed conditions since the execution of the lease have rendered the land wholly unsuitable for the purposes for which it was originally restricted, if in fact it was so restricted; (4) whether the sole purpose of the lease was to permit extraction of oil and gas. A determination of any or all of these questions favorable to the plaintiffs would not entitle them to judgment in their favor, since they are all immaterial. Furthermore, the affidavit in opposition to the motion does not allege facts which would support a determination of these questions favorable to plaintiffs. It does not state that there would be no interference with defendant's rights, nor that the interests of the parties were other than that clearly expressed in the instrument, nor are facts stated indicating that the property has become "wholly unsuitable" for the purposes for which it was leased. It is not disputed that oil is being produced in paying quantities. Plaintiffs are receiving $109 per month, and this represents only the lessor's one-sixth interest. There was therefore no triable question of fact presented and the trial court correctly entered judgment in favor of defendant. The terms of the lease, providing that the possession of the lessee shall be sole and exclusive, could not be more explicit. The clause reserving to the lessor the right of occupancy for limited purposes, none of which is residential, is equally explicit. There is no merit to the contention that the provisions are in any way ambiguous so as to present a question of fact as to their meaning. Nor is there any merit to the contention that the trial court exceeded its powers on a motion for summary judgment by determining questions of fact. It was not necessary to determine the immaterial questions presented and the judgment does not purport to do so. (See *Enos* v. *Foster*, 155 Cal.App.2d 152 [317 P.2d 670].)

It is argued (without citation of authority) that there is a factual question relating to "frustration of purpose due to failure of consideration." The lease expressly provides that the lessee is "to have and to hold the same for a term of twenty (20) years from and after the date hereof and so

long thereafter as oil or gas . . . is produced therefrom.'' It is not contended that oil or gas is no longer being produced, and obviously the 20-year period has not expired. Its terms do not set forth a minimum production which, if not met, will terminate the lease. The situation is merely one in which plaintiffs' predecessors surrendered their rights to use the surface for a consideration with which plaintiffs are not satisfied. In order to regain the rights, plaintiffs must negotiate with the person to whom they were surrendered on terms agreeable to both.

Plaintiffs argue that the lessor of an oil and gas lease may use the property as he sees fit insofar as such use does not interfere with the rights of the lessee to carry out the purpose of the lease. He cites *Chandler* v. *Hart,* 161 Cal. 405 [119 P. 516, Ann.Cas. 1913B 1094] ; *Pulaski Oil Co.* v. *Conner,* 62 Okla. 211 [162 P. 464] ; *Cosden Oil & Gas Co.* v. *Hickman,* 114 Okla. 86 [243 P. 226] ; *Gulf Pipe Line Co.* v. *Pawnee-Tulsa Petroleum Co.,* 34 Okla. 775 [127 P. 252, 41 L.R.A. N.S. 1108]. The *Gulf* case merely held that the lessee may not arbitrarily select a place to drill which would interfere with the surface rights of the lessor, when it would be equally convenient to drill at another spot on the leasehold. In the *Cosden* case it was held that the owner of the surface could subdivide and build and that this would not unreasonably interfere with the lessee's rights since he could still develop on the area on which construction was contemplated. There does not, however, appear to have been a clause in the lease limiting the lessors' use of the surface as in the instant case. The *Pulaski* case is completely inapposite in that it dealt with the liability of the lessee for negligent damage to crops, in the absence of a covenant promising to pay damages. It held that the lessee is liable. The *Chandler* case, decided by our own Supreme Court, decided only that the lease there in question was valid. There is nothing in the holding or language of that case or any of the others cited that would give the lessor surface rights denied him by the terms of the lease. To do so would be to rewrite the terms of the agreement, which this court has not the authority to do (see Code Civ. Proc., § 1858).

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied September 5, 1961, and appellants' petition for a hearing by the Supreme Court was denied October 4, 1961.