[Civ. No. 8241.   Fourth Dist., Div. Two.   Aug. 30, 1967.]

COSTA MESA UNION SCHOOL DISTRICT OF ORANGE COUNTY, Plaintiff, v. SECURITY FIRST NATIONAL BANK, as Trustee, etc., et al., Defendants and Respondents; G. E. KADANE & SONS et al., Defendants and Appellants.

Rutan & Tucker, Leonard A. Hampel and Homer L. Mc-Cormick, Jr., for Defendants and Appellants.

Kindel & Anderson and Angelo J. Palmieri for Defendants and Respondents.

No appearance for plaintiff.

KERRIGAN, J.—The plaintiff-school district was successful in this condemnation proceeding in acquiring a parcel of land as a site for the construction of an elementary school. The jury awarded $474,000 as the fair market value of the land taken and fixed severance damages in the sum of $188,-000, and no issue is involved as to the adquacy of the monetary award. The dispute to be resolved on appeal is whether the trial court erred in apportioning the $474,000 evaluation award between the appellants and respondents. (Code Civ. Proc., § 1246.1.) While there are numerous parties-defendant designated in the lawsuit, all of whom have some legal, equitable or beneficial interest in the parcel taken, the real parties-in-interest on appeal are the appellant G. E. Kadane & Sons, a copartnership, whose interests are identical with those of the remaining appellants, and the respondent Beeco, Ltd., a corporation, whose rights are compatible with those enjoyed by all the other respondents. Hence, for the sake of brevity and clarification, all appellants will be categorized in this opinion as "Kadane" and all respondents as "Beeco" unless otherwise specifically provided.

The land taken comprised 11.56 acres. The "take" included surface rights together with 100 feet of the subsurface, which simply means that the owners were allowed to retain that portion of the land lying below a depth of 100 vertical feet for the purpose of extracting oil, gas, and other hydro-

carbon substances and minerals. The land taken was part of a larger parcel containing some 590 acres, which greater parcel was owned by Beeco. Of the 11.56 acres taken, Beeco owned surface rights as well as the fee in 2.79 acres inasmuch as Kadane had previously conveyed such surface rights to Beeco. However, Kadane enjoyed surface rights in the remaining 8.77 acres as the lessee under an oil and gas lease, which lease encompassed the entire 590-acre parcel. The trial court's method of evaluation of the surface rights in the 8.77 acres gave birth to this appeal.

The 8.77-acre parcel involved was situated at the time of trial in both incorporated and unincorporated territory: 7.25 acres were located in the City of Newport Beach and the remaining 1.52 acres were situated in the County of Orange. However, the zoning of the acreage in both governmental jurisdictions was of such a nature as to permit oil production.

The larger parcel containing 590 acres owned by the respondent Beeco was subject to a lease authorizing oil and gas production by the appellant Kadane. Kadane, by virtue of the provisions of the mineral lease, had the right to use the surface of the larger parcel as well as the part taken, with the exception of the foregoing 2.79 acres which Kadane quitclaimed to Beeco, and with the further exception of 80 acres which Kadane had previously conveyed to other respondents. In conveying the lessee's surface rights to the 80 acres to respondents, Kadane reserved the right to recover hydrocarbon deposits lying beneath the surface of the aforementioned 80 acres. Since execution of the lease in 1944, the entire demised property, including the 8.77 acres of the part taken, but excluding the 80-acre quitclaimed area, has been utilized by Kadane and appellants' predecessor-in-interest, as an oil field. The production of oil has been accomplished by Kadane through employment of a method known in the trade as *insitu combustion*, whereby underground burning is effected for the purpose of repressurizing the underground oil formation structures. Although the surface of the land taken was not actually used by the lessee in connection with oil production, portions of the remainder (with the exception of the quitclaimed areas) have been improved by Kadane with oil pump units, tanks, compressor plants, pipe lines, roadways, an office building, workshops, sheds, equipment yards, and other facilities incidental to the production of oil and gas.

The mineral lease agreement affecting the larger parcel and

the 8.77 acres provides, *inter alia*, as follows: "The lessor does hereby let, lease, and demise unto the lessee for the term and upon the conditions hereinafter set forth, that certain real property situated in the County of Orange.

(Legal description of larger parcel.)

"TOGETHER WITH all petroleum, gas and other hydrocarbon substances contained in said property, with the right to take, own, hold, remove and enjoy the same, subject, however, to the payment of royalties hereinafter provided;

"To HAVE AND To HOLD the same . . . (for a term of 30 years) . . . while oil or gas or casinghead gas or other hydrocarbon substances, or either or any of them, is produced in paying quantities, . . . *for the purpose of drilling and boring, exploring, mining and operating for oil, gas, casinghead gas, and other hydrocarbon substances, and taking, storing, removing and disposing of the same, and manufacturing gasoline and other products therefrom* with the right for such purpose to the free use of oil, gas and water from said land as hereinafter provided, and hereby *grants the right to build tanks, power houses, stations, houses for employees and other structures as may be necessary or convenient in its operations, together with all rights of way, easements and servitude for pipe lines, telephone and telegraph lines, with the right of removing, either during or after the term hereof, and in accordance with the terms and conditions hereof, any and all improvements placed or erected in or upon the premises by the Lessee, including casing of oil wells, it being understood that any and all such roads, pipe lines, telephone, telegraph and electric lines shall adapt themselves, so far as practicable, to the present and subsequent uses of the property by the Lessor*; and it being further understood that if any of the leased premises shall be surrendered by the Lessee and subsequently subdivided by the Lessor. the Lessee shall use any roads or streets made in such subdivision for such use as practicable in going to and from the wells and other works constructed and operated by the Lessee hereunder.

". . .

"In the construction and maintenance of buildings, tanks, roads, water wells and pipe lines and other equipment necessary for the development and operation of said premises hereunder and for the handling and removing of said production thereof and therefrom under the terms of this lease, the Les-

see shall immediately bury all pipe lines across plow lands so that the top of any pipe line shall not be closer to the surface of the ground than twenty (20) inches.

*"Lessor shall have the right to use all the surface of the leased premises for horticultural, agricultural and grazing purposes, to such an extent as will not interfere with the proper operation of the lease for oil or gas,* and shall also have the right to use such portion of said premises as is within two hundred (200) feet of any street or roadway upon which the leased premises abuts for the erection of such buildings or other structures as it may desire to erect thereon, except for the purposes of drilling for oil or gas, so long as such buildings or structures do not interfere with the reasonable operations of the Lessee. The Lessee agrees to conduct its operations so as to interfere as little as is consistent with the economical operation of the property for oil or gas with the use of the land for horticultural, agricultural, grazing or building purposes, as aforesaid." [Italics added.]

The original term of the lease was for a period of 30 years, but pursuant to an amendment executed in 1954, the term was extended to the year 1994 and so long thereafter as oil and gas were produced.

On March 4, 1965, the issue of "public use" was tried before the court without a jury and the trial court determined the issue in favor of the plaintiff-school district. Trial of the valuation and damage issues was commenced before a jury on March 8, 1965. However, prior to submission of the cause to the jury, a stipulation was entered into by and between the parties that the market value of the land condemned was in the sum of $474.000. and the jury was instructed to return a verdict for the stipulated amount. The jury trial continued on the issue of whether there was severance damage to the remainder of the property not sought to be condemned but which formed a part of the acreage taken. The jury returned with a general verdict on the severance damage issue in the sum of $188,000. The jury's special verdicts reflected that of said $188.000 award, $165,000 was attributable to loss of mineral reserves and the remaining $23 000 was occasioned by the increased costs of producing the minerals.

After the presentation of the evidence and rendition of the verdicts. counsel agreed to submit the oil and gas lease to the court. sitting without the jury. for a determination as to the nature and effect of the lease. The only evidence presented to

the court on interpretation of the lease issue was the lease itself. Counsel then presented arguments to the court. It should be noted that at this point the only question to be determined was the nature and extent of the lessee's rights in the surface of the land taken, which issue involved an interpretation of the lease. The court then concluded: ''The question of whether a lessee under a mineral lease is entitled to share in the award for the value of the part taken is a question of law to be decided by the court. This share, as a matter of law, is nominal in amount . . .''

The court decided as a matter of law that Kadane was entitled to a token award of $1.00 as lessee's share of the fair market value of the part taken. The balance of $473,999 was awarded to Beeco as owner of the fee title.

A further stipulation was then entered into regarding apportionment of any severance damages whereby it was agreed appellants were entitled to the sum of $147,000 of the total severance damages of $188,000; the respondents, with the exception of the fee owner, Beeco, Ltd., received the balance of $41,000 in severance damages in their capacity as oil lessors. Respondent Beeco, Ltd. received nothing whatsoever for severance damages.

The oil lessees appeal and assert that the trial court erred in the following respects: (1) In ruling as a matter of law that the value of the lessees' interest in the part taken was in the nominal sum of $1.00; (2) the oil lessees were entitled to a jury trial in the apportionment proceedings for the part taken; and (3) the court's interpretation of the lease agreement was erroneous in holding that Beeco, Ltd., as the fee owner and lessor, had the right to use the surface of the property for any and all purposes except uses relating to the obtaining of oil.

█ In a condemnation action a tenant is entitled to a sum which will compensate him for his pecuniary loss as a result of the exercise of the power of eminent domain. (4 Nichols, Eminent Domain (3d ed.) § 12.42(3).) █ The guiding principle of just compensation is reimbursement to the owner for the property interest taken; he is entitled to be put in as good a position pecuniarily as if his property had not been taken; he must be made whole, but is not entitled to more. (*United States* v. *Virginia Elec. & Power Co.*, 365 U.S. 624 [5 L.Ed.2d 838, 81 S.Ct. 784].) █ In an eminent domain action, the lessee is entitled to the fair market value of

his leasehold interest in the part taken. (*Oakland* v *Pacific Coast Lumber etc. Co.*, 171 Cal. 392, 399 [153 P. 705]; *Kishlar* v. *Southern Pac. R.R. Co.*, 134 Cal. 636, 639 [66 P. 848].)

■ A tenant's interest under a lease for a term of years is subject to ownership and is held as any other interest in land is held, subject to the exercise of the power of eminent domain; the tenant is guaranteed just compensation before his title can be divested under the power of eminent domain. (*City of Pasadena* v. *Porter*, 201 Cal. 381, 386 [257 P. 526, 53 A.L.R. 679]; see *City of Santa Cruz* v. *MacGregor*, 178 Cal.App.2d 45, 54 [2 Cal.Rptr. 727]; *Sacramento etc. Drainage Dist.* v. *Truslow*, 125 Cal.App.2d 478, 485 [270 P.2d 928, 271 P.2d 930].) ■ Where there are separate interests in the land taken, the property is to be valued as if owned by a single person, regardless of the separate interests therein, subject to apportionment. (*City of Los Angeles* v. *Klinker*, 219 Cal. 198, 211 [25 P.2d 826, 90 A.L.R. 148]; *Federal Oil Co.* v. *City of Culver City*, 179 Cal.App.2d 93, 98 [3 Cal.Rptr. 519]; *El Monte School Dist.* v. *Wilkins*, 177 Cal.App.2d 47, 55 [1 Cal.Rptr. 715]; *People* v. *S. & E. Homebuilders, Inc.*, 142 Cal.App.2d 105, 107 [298 P.2d 53].)

■ Where a governmental entity acquires a fee simple interest in land through the exercise of the power of eminent domain, and the parcel taken is subject to the reservation of a mineral interest, whereby the mineral owners have an easement over the surface of the land for gaining access to mine the minerals beneath the land, the value of the easement presents a factual issue. (See *United States* v. *4.553 Acres of Land, More or Less*, 208 F. Supp. 127, 130.) "An easement to mine and for access to mine by its very nature has a potential for damaging or destroying the surface fee." (*United States* v. *4.553 Acres of Land, More or Less, supra*, 208 F. Supp. 127, 130.) ■ An easement has been defined as an interest in land created by grant or agreement, express or implied, which confers on its owners a right to some profit or benefit, dominion, or lawful use out of or over the estate of another. (*Los Angeles Terminal etc. Co.* v. *Southern Pac. R.R. Co.*, 136 Cal. 36, 48 [68 P. 308]; *City of Hayward* v. *Mohr*, 160 Cal.App.2d 427, 432 [325 P.2d 209].) ■ A right of *profit à prendre* is a right to make some use of the soil of another, such as a right to mine metals; the underlying principle is that it carries the right of entry and the right to remove and take from the land the designated products or profit; in addition, it includes the

right to use such of the surface as is necessary and convenient for the exercise of the profit. (*Callahan* v. *Martin*, 3 Cal.2d 110, 122 [43 P.2d 788, 101 A.L.R. 871].) A *profit à prendre* is similar to an easement in that it is an interest in land. (*Painter* v. *Pasadena Land & Water Co.*, 91 Cal. 74, 84 [27 P. 539].) Thus, the lessee's right to use the surface of the land herein for the extraction of minerals may be characterized as an easement. (See *United States* v. *4.553 Acres of Land, More or Less, supra.*)

In the case under review, the oil lessee had a right to place improvements on the surface of the part taken pursuant to the provisions of the lease. The value of the right to use the surface for the development of oil resources presents a factual issue. However, the trial court ruled as a matter of law that the value of the surface right was nominal in amount. Clearly, the court erred in making such a determination.

In all fairness to the trial judge, it should be noted that the court placed strong reliance on the authority of *Federal Oil Co.* v. *City of Culver City, supra,* 179 Cal.App.2d 93. The cited case constituted an inverse condemnation action by the lessee to recover the value of its right to use the surface under an oil and gas lease; the right to use the parcel taken for oil exploration was so restricted by zoning prohibitions and economic factors that no possibility existed for extracting minerals; the trial court found as a matter of *fact* that the value of the lessee's interest was nominal in amount and awarded the oil lessee the sum of $1.00; however, evidence was presented to the trial court indicating that the lessee's right to use the surface had a substantial value; nevertheless, it should be emphasized that the trial court in *Federal Oil* determined the valuation issue after the presentation of evidence relating to value and did not make its determination as a matter of law. In the case under review, the trial court did not permit the introduction of evidence relating to the issue as to the value of the lessee's right to use the surface of the part taken, but concluded that the lessee was entitled to a token sum as a matter of law.

Furthermore, the record clearly establishes that the only evidence introduced during the apportionment proceeding relating to the evaluation issue consisted of the lease and the amendments thereto. Consequently, the only purpose of the hearing was to permit the court to make a determination as to the rights of the parties in and to the surface of the part

taken, which issue required an interpretation of the lease. The parties contemplated that evidence would be introduced on the valuation issue. The trial court properly did make a determination as to the extent of the parties' interest in the surface, but erred in ruling as a matter of law that the lessee's interest was nominal in amount.

The condemner demanded a jury trial and a jury trial did ensue relative to the issue of valuation and severance damages. It appears manifest that the appellants never waived their right to a jury trial on the apportionment of the valuation award inasmuch as the transcript reflects that the jury was "standing by" and being held in abeyance pending a determination of the legal issue as to the extent of the parties' surface rights under the lease agreement.

Private property shall not be taken or damaged for public use without just compensation to the owner, which compensation shall be ascertained by a jury, unless a jury be waived. (Cal. Const., art. I, § 14; *City of Redondo Beach* v. *Kumnick,* 216 Cal.App.2d 830, 833 [31 Cal.Rptr. 367].) The issue of compensation is always for the jury unless a jury is waived as required by law. (*Vallejo etc. R.R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 555 [147 P. 238].) In a condemnation action, the waiver of jury trial must be "by oral consent in open court entered into the minutes . . ." (*City of Redondo Beach* v. *Kumnick, supra.*) The right to a jury trial in an eminent domain action also embraces the separate proceedings relating to the apportionment of the award. (Code Civ. Proc., § 1246.1.) The lessees herein never waived their right to a jury trial on the issue as to the apportionment of the valuation award.

Finally, the lessees maintain that a lessor under an oil and gas lease has no greater interest in the surface than that which the lessor specifically reserves, and that the lessor herein reserved only an interest for horticultural, agricultural, grazing and related uses, and that consequently, the appellants had the right to use the surface for any other purposes and were not limited in their use of the surface to those purposes involving only oil and gas production. (*Taylor* v. *Odell,* 50 Cal.App.2d 115, 120 [122 P.2d 919]; *Siemon* v. *Russell,* 194 Cal.App.2d 592, 596-597 [15 Cal.Rptr. 218].) Simply stated, appellants maintain that the trial court's conclusion respecting the right of the lessors to use the surface is erroneous. The conclusion of the trial court reads as follows: "That . . . Beeco Ltd. has the right to use the surface of the

real property for any and all purposes not inconsistent with the rights of . . . [appellants].'' The substance of the trial court's finding was to the effect that the lessees' right to use the surface was restricted to uses involving oil and gas production only.

Appellants base their argument on the ground that the granting clause in the lease agreement vests them with two separate estates: an interest in the surface and a profit in the minerals beneath the surface.

The lease provides: ''That for and in consideration of the sum of Ten Dollars ($10.00) . . . the Lessor does hereby let, lease and demise unto the Lessee . . . that certain real property (legal description of parcel). . . .''

However, the lease also contains the following provision immediately following the granting clause: ''For the purpose of drilling and boring, exploring, mining and operating for oil, gas . . . and other hydrocarbon substances. . . .''

Under *Taylor* v. *Odell, supra,* 50 Cal.App.2d 115, and *Siemon* v. *Russell, supra,* 194 Cal.App.2d 592, 597, it was held that a lessor under an oil and gas lease has no greater interest in the leased land than that which he specifically reserves. (See also *Hancock Oil Co.* v. *Meeker-Garner Oil Co.,* 118 Cal. App.2d 379, 386 [257 P.2d 988].) However, *Hancock Oil* and *Siemon, supra,* involved indentures containing provisions wherein the lessee was given *exclusive possession* of the surface. *Taylor* v. *Odell, supra,* did not restrict the lessee in any way in his use of the surface, and the lessee under the latter case had the right to use the surface for purposes other than oil development purposes. However, in the lease under review, the lessee is limited in its surface rights to uses incident to the exploration and development of oil and gas.

▮▮▮ California authorities are clear that a statement in a lease to the effect that the purpose for which the premises are let is the exploration and production of oil and gas results in the possession of the lessee being limited to such use as is reasonably incident to such purpose; therefore, where there is language reflecting that the purpose of the lease is for the exploration and production of oil, then no general estate in the surface is granted to the lessee. (*Chandler* v. *Hart,* 161 Cal. 405, 413 [119 CP. 516, Ann.Cas. 1913B, 1094].) In *Chandler* v. *Hart, supra,* the court used the following language: ''A lease may, of course, limit the uses which the tenant may make of the land, and the purposes for which he may have the right of possession. This lease does limit the

rights of the tenant, by particularly describing them. The implication is that it shall not be used by it for other purposes. The result is that the lessee was granted an estate in the land for fifty years for the purposes of discovering oil therein and of extracting and selling it, with the other incidental rights mentioned.''

In *Chandler* v. *Hart, supra,* the lease reserved the right in the lessor to use the surface for agricultural purposes, and further provided that the lessee should have the right to use the land for the purpose of discovering oil therein and extracting and selling it. The Supreme Court held that the lessors' right to make agricultural uses did not operate to expand the lessee's rights beyond the purposes stated in the lease, and ruled that the lessor had the right to utilize the surface for all reasonable purposes so long as the lessor did not interfere with the lessee's oil operations.

In *Federal Oil Co.* v. *City of Culver City, supra,* 179 Cal. App.2d 93, the lease contained language which is substantially identical with the terminology utilized in the lease now under review. The *Federal* lease provided that the lessor does ''lease, let and demise unto lessee'' the described premises ''with the sole and exclusive right to drill for, produce, extract . . . oil, gas. . . .'' Agricultural, horticultural and grazing uses were reserved to the lessor in the following language: ''The lessor reserves the right to occupy said land, or to lease the same for agricultural, horticultural or grazing uses.'' The court held that even though, pursuant to the terms of the lease, the lessee had the sole and exclusive right to possession with certain reservations in the lessor, nevertheless, said ''sole and exclusive'' right to possession was for the limited purpose of utilizing its *profit à prendre* and for no other purpose.

Consequently, the trial court's finding to the effect that the lessor has the right to use the surface of the real property taken for any and all purposes not inconsistent with the rights of the lessee is approved inasmuch as the lessee's right to use the surface is clearly limited to those uses defined in the lease agreement, which purposes relate solely to the exploration, development and production of oil, gas and other hydrocarbon substances and uses incidental thereto.

The judgment is reversed.

McCabe, P. J., concurred.